UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHANIE STANFIELD,

    Plaintiff,

v.                                                        Case No.: 8:15-cv-01472-EAK-TBM

SUNTRUST BANK,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS COUNTS II THROUGH VI

This cause comes before the Court on Defendant's Motion to Dismiss Counts II Through VI of Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Docket No. 20). After careful consideration of both parties' submissions, together with the well-pleaded allegations of the Plaintiff's Amended Complaint, the Court concludes that Defendant's Motion to Dismiss Count II is **DENIED**, Counts III, IV, VI are **GRANTED WITHOUT PREJUDICE** to allow Plaintiff to bring claims under Georgia law, and Count V is **GRANTED WITH PREJUDICE**.

## PROCEDURAL HISTORY

Plaintiff initially filed a seven-count Complaint (Docket No. 1) before this Court alleging Violation of Corporation and Criminal Fraud Accountability Act: 18 United States Code § 1514A (Count I), Violation of Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (Count II), Violation of Florida's Whistleblower Act (Count III), Breach of Contract (Count IV), Breach of Implied Covenant of Good Faith and Fair Dealing (Count V), Intentional Infliction of Emotional Distress (Count VI), and Fraud in the Inducement (VII). All counts are derived from allegations of fraudulent and retaliatory conduct by the Defendant during the

Plaintiff's recruitment and subsequent employment with the Defendant. Upon Defendant's Motion to Dismiss (Docket No. 10) arguing that Count II was not applicable to Defendant because of its status as a state-chartered bank, Plaintiff agreed to remove Count II and subsequently filed its six-count Amended Complaint (Docket No. 11) before this Court. In response, Defendant filed a Motion to Dismiss Counts II through VI of Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Docket No. 20). Subsequently, Plaintiff filed a response (Docket No. 29). Jurisdiction of this Court is proper pursuant to a question of federal law, 18 U.S.C. § 1514A(b)(1)(B).

## FACTS

This is a brief summary of the extensive facts set forth in the Plaintiff's Amended Complaint and Demand for Jury Trial (Docket No. 11). The Court accepts these facts as true for the purpose of resolving this motion only. Defendant, SunTrust Bank (SunTrust), is a state-chartered bank with its principle place of business located in Atlanta, Georgia and an office in Tampa, Florida. In 2013, Plaintiff, Stephanie Stanfield (Stanfield), was recruited by SunTrust to leave her position as a Wealth Advisors Team Director for BB&T in Atlanta, Georgia and relocate to SunTrust's Tampa, Florida office.

During the course of recruitment, SunTrust submitted a written offer of employment to Stanfield which included: a) an employment start date of October 28, 2013; b) her job description; c) her supervisor; d) her annual salary; and e) a promise of recommendation for the title of Senior Vice President at the next nominating meeting. Additional considerations were offered to Stanfield in the form of a signing bonus, stock options, and performance-based incentives. SunTrust included conditions on these awards such as: they would become fully vested after three years from the offer, Stanfield would not be eligible to receive any hiring

incentives unless all preconditions of the employment offer letter were satisfied, and that if Stanfield did not remain with SunTrust for a minimum time period of thirty-six (36) months, she would be responsible for repayment of incentives received on a pro rata basis.

Further, the offer letter indicated that if Stanfield terminated her employment for any reason or is terminated by SunTrust for any reason other than death, disability, job elimination, or reduction in force, she would be required to repay the full gross amount of incentives. Finally, the offer of employment between SunTrust and Stanfield provided that it was not a contract for employment and that Stanfield would be an employee-at-will. A Governing Law provision in the offer stated that the terms and conditions of the offer "shall be governed by the laws of the State of Georgia." Docket No. 20 Exhibit A.

Stanfield signed and accepted this offer of employment on October 30, 2013, and began her position as Managing Director under the direction of Debbie Carswell (Carswell). Stanfield was assigned the task of supervising a team in Wealth Division, which was considered by management to be underperforming.

In July 2014, Stanfield became aware of potential violations of both deposits and federal trade and security laws, as well as improper handling of trading and investments in regards to a particular client account. Stanfield raised her concerns to her supervisor, Carswell. When no action was taken to address potential issues, Stanfield scheduled risk review meetings with individuals in supervisory roles, including Carswell.

As of September 10, 2014, Stanfield was advised she was handling her position well and her team was showing steady improvement. There were no performance concerns set forth by SunTrust.

Stanfield continued to raise concerns verbally and in writing about the handling of the client account to Carswell and others in supervisory roles.

Within two months of Stanfield's September 2014 performance review, and "shortly" after raising concerns regarding the client account, Stanfield received a verbal warning about her job performance stating that she escalated the situation of the client's account unnecessarily and beyond reality. She was instructed to maintain the account and termination was threatened. Carswell disciplined Stanfield for job performance issues in November 2014. Upon this review and verbal warning from Carswell, Stanfield filed a complaint with SunTrust's human resources department.

On February 13, 2015, Carswell advised Stanfield she would either be terminated and provided thirty (30) days' pay, or she would have the right to resign and be provided ninety (90) days' pay. Carswell cited performance-based considerations and a statement that Stanfield had escalated the client account situation beyond reality in Stanfield's termination plan. Stanfield filed a complaint with human resources regarding Carswell's actions and asserted the actions were in retaliation to Stanfield's concerns of illegal activity in the handling of the client account.

Subsequent to the filing of Stanfield's complaint against Carswell, Stanfield was told to report to Thomas Carroll (Carroll) alternatively. At the meeting, Carroll informed Stanfield it would be in SunTrust's best interest if Stanfield terminated her employment. Stanfield was offered sixty (60) days' pay upon termination of employment, or alternatively, ninety (90) days' pay if she resigned. Carroll placed Stanfield on probation and she was advised she must meet 100% of her performance goals.

On March 30, 2015, Stanfield provided Carroll with a summary of her team's productivity and acknowledged it did not meet the goal set for her and her team. Carroll stated

Stanfield should report to work as usual. On April 1, 2015, Stanfield was locked out of her email and the SunTrust computer system, and she was informed that the system indicated her email had been suspended because of termination. On April 2, 2015, Stanfield filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) detailing retaliatory actions of her employer, SunTrust.[1]

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating whether a complaint meets the federal pleading standard, the Court is not required to "accept as true" any allegations that constitute legal conclusions. *Id.*

Once the Court has identified the plaintiff's well-pleaded factual allegations that do not constitute legal conclusions, the Court must determine whether those allegations "plausibly give rise to an entitlement to relief." *Id.* at 679. This, according to the Supreme Court, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

---

[1] This Court takes judicial notice of Plaintiff's Charge of Discrimination as filed with the Equal Employment Opportunity Commission on April 2, 2015 pursuant to Defendant's request and Federal Rules of Evidence 201(c)(2).

## DISCUSSION

### I. Plaintiff's Florida Whistleblower Act Claim is not Preempted by the National Banking Act.

Defendant argues that Stanfield's Florida Whistleblower Act (FWA) claim against SunTrust Bank should be dismissed because this state law that protects whistleblowers against private employers and is a recognized exception to at-will employment, Fla. Stat. Ann. § 448.102, "prevents or significantly interferes with [a] national bank's exercise of its powers... to dismiss such officers or any of them at pleasure" pursuant to the National Banking Act (NBA). *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996). However, of paramount significance to the Defendant's position is the fact that SunTrust is a Georgia *state*-charted bank, not a national bank. Docket No. 20 p. 6. The Defendant recognizes its out-of-state bank status, yet it argues that it should be treated as a national bank under the Riegle-Neal Amendments Act of 1997. *Id.* This act amended the Federal Deposit Insurance Act (FDIA), 12 U.S.C. § 1831a, to read:

> "The laws of a host State, including laws regarding community reinvestment, consumer protection, fair lending, and establishment of intrastate branches, shall apply to any branch in the host State of an out-of-State State bank to the same extent as such State laws apply to a branch in the host State of an out-of-State national bank. To the extent host State law is inapplicable to a branch of an out-of-State State bank in such host State pursuant to the preceding sentence, home State law shall apply to such branch."

Considering this amended FDIA, the Defendant cites to the Eleventh Circuit's application of this language dealing specifically with the FDIA preempting a Florida statute that prohibits banks from charging check-cashing fees. *Pereira v. Regions Bank*, 752 F.3d 1354, 1357 (11th Cir. 2014). Where the Defendant fails in its analogy is that this amendment to the FDIA applies to out-of-state banks in regard to state laws that deal specifically with "community reinvestment,

consumer protection, fair lending, and establishment of intrastate banks." 12 U.S.C. § 1831a. This specific application of law was omitted in the Defendant's motion, but this Court feels it is very relevant to the analysis. There is nothing to suggest that this language, in a statute addressing deposit insurance of national banks, extends a protective shield over an out-of-state bank against a whistleblower claim.

Additionally, this Court considers the Plaintiff's concern in its initial complaint, when Plaintiff alleged the Defendant violated the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), a statute applicable to national banks, the Defendant requested dismissal of the count based on the fact that SunTrust Bank was a state-chartered bank. Docket No. 29 ¶ 21. Plaintiff then agreed with Defendant to dismiss the Count given SunTrust's state-bank status. *Id.* However, now that Plaintiff has amended her complaint to reflect only a FWA claim applicable to state banks, Defendant argues it should be treated as a national bank and be exempt from the FWA claim. In essence, the Defendant contradicts itself by claiming it is exempt from certain federal statutes governing national banks, yet is entitled to the protection of certain federal statutes governing national banks.

Finally, as a matter of public policy, this Court recalls that the purpose of the FWA is to act as an exception to Florida's at-will employment doctrine and provide employees a cause of action against employers who wrongfully discharge them for objecting to or refusing to participate in the employer's illegal activities. *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904 (Fla. 4th DCA 2013). To shut the door on the Plaintiff's claim would not only frustrate the purpose of the Act, but it would also deny Plaintiff the chance to set forth a material issue of fact afforded to others in claims against the Defendant. *Rutledge v. SunTrust Bank*, 2007 WL

604966, (M.D. 2007) aff'd, 262 F. App'x 956 (11th Cir. 2008); *Moreland v. SunTrust Bank*, 981 F. Supp. 2d 1210 (M.D. Fla. 2013).

For these reasons, the Defendant's Motion to Dismiss Count II is DENIED.

### II. Plaintiff's Counts III and V of its Amended Complaint are not Preempted by the NBA and Georgia Choice of Law Provision is Applicable to Counts III, IV, VI.

Having rejected the Defendant's NBA preemption argument for the reasons stated above, Defendant's subsequent argument that the Plaintiff's additional claims of Breach of Contract (Count III) and Intentional Infliction of Emotional Distress (Count V) are preempted is moot.

Turning to the Defendant's alternative argument, it presents the fact that the Plaintiff's employment offer letter contains a provision stating that "[t]he terms and conditions of this offer of employment shall be governed by the laws of the State of Georgia." (Defendant Motion to Dismiss Exhibit A, p. 5). As a general rule, Florida enforces choice-of-law provisions unless the laws of a chosen forum contravene public policy. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000). This Court finds there is nothing to suggest that applying Georgia law to Plaintiff's claims related to the employment offer itself would contravene Florida public policy.

Further, Plaintiff's opposing argument centers on case law stating a forum-selection clause in an agreement is not valid when it is the consequence of fraud or overreaching. *First Pac. Corp. v. Sociedade de Empreendimentos e Construcoes, Ltda.*, 566 So.2d 3 (Fla. 3d DCA 1990). However, this conjecture is outside the scope of Defendant's argument, as it does not assert Plaintiff should be forced to bring separate causes of actions in Georgia. Docket No. 29 ¶ 42. Rather, Defendant persuasively argues that claims arising out of the agreement be plead under Georgia law before this Court.

Plaintiff will be provided with a chance to draft an amended complaint that adheres to the agreement's choice of law provision and that pleads Georgia law for the following counts: Breach of Contract (Count III), Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV), and Fraud in the Inducement (VI). Alternatively, the parties should come to an agreement as to what law will govern the claims applicable to claims arising out of the employment agreement.

For these reasons, the Defendant's Motion to Dismiss Counts III, IV, and VI of the Amended Complaint is GRANTED WITHOUT PREJUDICE to allow Plaintiff to bring her claims under Georgia law.

### III. Plaintiff's Allegation of Intentional Infliction of Emotional Distress is Insufficient to Meet the High Threshold of Florida Precedent.

As an initial matter, this Court rejects the Defendant's extension of the choice of law provision to the Plaintiff's claim for Intentional Infliction of Emotional Distress (Count V). This claim arises from allegations of a hostile work environment and is outside the scope of the governing law provision's language that Georgia law will govern "terms and conditions of the offer of employment." Docket No. 20 Exhibit A p. 5. For this reason, this Court considers the Plaintiff's claim within the parameters of Florida law.

The elements for a cause of action for the intentional infliction of emotional distress (IIED) are: (1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous and is regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe. *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212 (Fla. 5th DCA 1995); *Dominguez v. Equitable Life Assur. Soc. Of U.S.*, 438 So. 2d 58, 59 (Fla. 3d DCA 1983). Florida courts have


set forth a rather stringent test to state a claim for IIED, stating an IIED case is one in which the recitation of the facts to an average member of the community would arouse [him] and lead him to exclaim, 'Outrageous!'" *Food Fair, Inc. v. Anderson*, 382 So. 2d 150, 153 (Fla. 5th DCA 1980).

While the Defendant is correct in stating that an IIED claim must meet a high threshold, this does not mean the Plaintiff's claim is defeated from the start. *See generally Stockett v. Tolin*, 791 F. Supp. 1536 (S.D. Fla. 1992) (ruling in favor of plaintiffs arguing claims in an employment context); *Albert v. National Cash Register*, 874 F. Supp. 1328, 1331 (S.D. Fla. 1994) (denying a motion to dismiss for failure to state a claim because plaintiffs allegations established a pattern of constant harassment). Precedent reveals the touchstone of successful IIED claims to be the presence of relentless, pervasive physical and verbal harassment. *Vernon v. Medical Management Assocs. of Margate, Inc.*, 1996 U.S. Dist. LEXIS 520, 26 (S.D. Fla. 1996). Therefore, this Court looks to the factors of both physical and verbal abuse, as well as the pervasiveness of such harassment.

The Defendant's assertion that the conduct alleged by the Plaintiff does not rise to the level of outrageousness required to state an IIED claim presents a difficult decision for this Court. Defendant correctly states that a claim of IIED is a matter of law for the Court, not a question of fact. *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1500 (M.D. Fla. 1993). With this in mind, this Court is bound by Florida case law, fellow district court decisions, and the Eleventh Circuit Court of Appeals decisions. The standard for IIED employment claims remains a high threshold and this Court looks to Plaintiff's claims for relentless, pervasive physical and verbal harassment by Defendant. *Vernon*, 1996 U.S. Dist. LEXIS at 526.

With these factors in mind, an analysis of the Plaintiff's allegations must be made. Plaintiff alleges that as a result of reporting allegedly illegal activities of the Defendant on a certain account, she was subjected to "unwarranted scrutiny and harassment" by Defendant's personnel. Firstly, Plaintiff was issued a verbal warning about her job performance shortly after raising concerns about the actions of the Defendant in regard to the account in question. After this verbal warning, without specificity to the time frame, Plaintiff alleges she was threatened with termination. Subsequently, Plaintiff alleges after threat of termination, she was placed on probation February 13, 2015. Plaintiff additionally alleges after "ongoing harassment and intimidation" by Defendant's personnel, she was constructively terminated. Finally, Plaintiff alleges that on two occasions Defendant attempted to coerce her into accepting unfair and detrimental terms of termination before a proper investigation took place. Plaintiff sets forth that the "constant threat of termination and intimidation efforts" by Defendant personnel caused her severe emotional distress.

Even assuming all allegations as true and considering them in the light most favorable to the Plaintiff as required by the dismissal standard, Plaintiff fails to set forth the pertinent factors of *physical harassment* and *pervasive harassment* set forth in *Vernon*. It is important to note the conduct suffered by the Plaintiff is by no means trivial, however this Court is bound by the analysis set forth in cases such as *Vernon* and *Food Fair, Inc.* This Court fails to see the facts as indicative as a *pervasive* pattern of *relentless physical* and verbal harassment.

For the reasons listed above, it is this Court's determination that, as a matter of law, the Plaintiff's allegations do not rise to the outrageousness necessary to prevail on a claim of IIED in the workplace. This determination is consistent with Florida precedent on the issue.

The Defendant's Motion to Dismiss for Failure to State a claim as to Count V of the Plaintiff's Amended Complaint is GRANTED.

Accordingly, it is **ORDERED** that the Defendant's Motion to Dismiss Count II is **DENIED**, Counts III, IV, VI are **GRANTED WITHOUT PREJUDICE** to allow Plaintiff to bring claims under Georgia law, and Count V is **GRANTED WITH PREJUDICE**. The amended complaint shall be filed within ten (10) days of this date. If no amended complaint is filed, the Defendant shall answer the remaining counts of the complaint which have not been answered within fifteen (15) days of this date.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 2ND day of March, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

Copies to:   All parties and counsel of record.